141    640
31 SC    8

## C. D. REBER v. HIRAM SCHITLER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF BERKS COUNTY.

Argued March 3, 1891—Decided April 20, 1891.

(a) In an action to recover the agreed price for horses sold and delivered, the plaintiff alleged that the sale was absolute and without warranty; the defendant, that, though a warranty was offered, the sale was conditional, to become absolute only on approval after further examination by the defendant, as to the cause of a lameness in one of the horses:

1. It was error to exclude defendant's offer to prove that, immediately after a further examination on delivery, he notified defendant of his refusal to accept; and error, also, in the charge to the jury to give such importance to the question of warranty as to divert attention from the primary question, whether the sale was absolute or conditional.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 77 January Term 1891, Sup. Ct.; court below, No. 14 June Term 1889, C. P.

On May 10, 1889, C. D. Reber brought assumpsit against Hiram Schitler. Plea, non-assumpsit.

At the trial on May 14, 1890, the plaintiff proved and put in evidence a bank check dated October 3, 1888, for $355, drawn by Hiram Schitler to the order of C. D. Reber. It being admitted that, on demand made, payment of the check by the bank was refused, the plaintiff rested.

The defendant then testified, in his own behalf, that on the evening of the date of the check the plaintiff had delivered at defendant's stables, at Reading, two horses for one Frederick Briel, a horse-buyer from Brooklyn, N. Y.; that the plaintiff preferred the defendant's check in payment to that of Briel,

Statement of Facts.

and defendant thereupon gave him the check in suit. Briel testified for the defendant that he and one Davis went to the plaintiff's place near Sinking Springs; that the plaintiff had two horses for sale, one of which was lame, and witness said he did not like to buy a lame horse; that plaintiff then said, " I'll warrant this horse to be all right; its only a bruise;" that the witness said, " If it is only a bruise, it will get all right;" that he then offered $345 or $350 for them both, and the plaintiff wanted more; that he then offered $355 for both, $175 for one and $180 for the other, saying he did not like to buy "this horse" unless he would warrant the bruise not to make any trouble; that the witness's offer was not accepted, and after he and Davis got on the cars to come away, the plaintiff called to the conductor, told him to tell the witness he could have the horses, when the witness directed that the horses should be brought to Schitler's stable; that the witness was around looking after other horses that afternoon, and in the evening found the horses at Schitler's stable, where he examined the lame horse, found that the swelling of his leg had gone down and that " it showed there was a slight spavin on the left hind leg;" that he had a veterinary surgeon examine the horse and found he was unsound, and the next morning he went to Ephrata, and from that place telegraphed to Reber to take the horses away, and had payment of the check stopped; that, a week or ten days after, on his return from New York, he found the horses at Schitler's, and had them sent home to the plaintiff.

The defendant then offered to prove that when the witness was at the plaintiff's, the latter put a price on each horse, one at $185, and the other having the lameness, at $175; that the next morning the witness sent a telegram (shown to witness) notifying defendant of the unsoundness of the one horse, and stating that he would take the sound horse at $180, but would not take the other; "for the purpose of showing that he brought notice home to Mr. Reber, as soon as he had seen the horse at Mr. Schitler's stable and discovered the defect; and for the purpose of showing a disaffirmance of the contract, and stopping payment of the check."

By Mr. Ruhl: The offer is objected to as being immaterial, irrelevant and inadmissible, unless it appears in evidence that this was an entire contract and the horses were sold together.

Statement of Facts.

Whatever conversation they had separately, before the sale was consummated, is immaterial and irrelevant. Anything that occurred after the sale is immaterial, unless it was an agreement to relieve Mr. Briel from the contract which had been already consummated.

Offer overruled; objection sustained; exception.

Davis, and other witnesses for the defendant, corroborated the testimony of Briel, Davis testifying that Briel told the plaintiff at the latter's place, "that he should deliver the horses at Reading, and here they were to be examined, and if he was satisfied with the examination, this was to be a sale."

In the rebuttal case, the plaintiff adduced testimony tending to show that Briel had seen the horses once before the date of the sale of them to him, and had examined them; that he examined them on the day of the sale, also, and the horses were sold to him absolutely at a sum certain for the two horses, and without warranty; "there was nothing said about a warranty."

The defendant, in his sur-rebuttal, produced a telegram from Mr. Briel at Ephrata, to the plaintiff at Sinking Springs, dated October 4, 1888, as follows: "Cannot take the one (1) gray horse; he has a spavin and is not lame from his kick; stop check for payment; will take the one (1) at one hundred and eighty dollars; see Schitler to-day;" and made the following offer:

We offer this telegram in evidence. Mr. Reber, the plaintiff, having sworn that he received this telegram on the fourth of October, we now offer it for the purpose of showing that as soon as the defect in the horse was discovered, we notified the plaintiff of the fact and informed him that we did not intend to keep the horses, thereby rescinding the contract, and that we had stopped the payment of the check.

Offer objected to by the plaintiff's counsel, on the ground that it is immaterial and irrelevant, and, furthermore, does not show that as soon as the alleged defect was discovered he notified the plaintiff; because he admitted upon the stand that the alleged defect was patent and visible and he saw it when he purchased the horse. It is incompetent and irrelevant.

By the court: The recollection of the court is that it is in evidence and uncontradicted, that the defendant, on the morning of the day succeeding the purchase of these horses, notified

Charge of Court below.

the plaintiff that one of the horses was lame or spavined, and that he would not keep him. The effect of the admission of this telegram, so far as it could possibly prove that fact, can only be cumulative; and as the contents of the telegram might be such as would tend to divert the attention of the jury from the real fact in issue in this case, the offer is rejected, and a bill is sealed for the defendant.[1]

The case closing on the testimony, the court, ENDLICH, J., charged the jury in part as follows:

The defendant alleges that, after giving this check on October 3, 1888, he found that one of the horses was unsound, that he was spavined, and that thereupon he returned these horses to the plaintiff; and, as authorizing the return of these horses which he had purchased and in payment of which he had given his check, he alleges that Mr. Reber, the plaintiff, at the time of the sale, warranted these horses to be sound.

Now, the first question that presents itself to you, and which you will pass upon, is this: Was there, or was there not, a warranty of these horses on the part of Reber, at the time of the sale? Now, what is a warranty? In sales of personal property, a warranty is an assurance given by the seller, as a part of the contract of sale, recommending the subject matter sold. It is an insurance on his part that the thing that he sells, a horse or any other article, shall be as he warrants it, shall have the qualities which he represents it to have. . . . . .

Now, gentlemen, bear these rules in mind, and if you find that what was said and done at the time of this sale, and before the giving of the check, was not intended on the part of the plaintiff to convey to the purchaser, to Mr. Briel, an assurance that this horse should be sound, a promise to be responsible for any unsoundness, then you will not have found a warranty, and that will be the end of the case. Your only duty, in case you find there was no warranty, will be to return a verdict for the plaintiff for the whole amount of this note or check, with interest from the date it bears.

If, however, you find that what took place at the time of this sale was intended by the plaintiff and received by the defendant, or by Mr. Briel, as conveying to him a warranty of the soundness of this horse, then you will proceed to make

Charge of Court below.

your second inquiry, and that will be this: Was, or was not, this horse such as he was represented to be? If he was as he was represented to be, then there was no breach of warranty; and then, again, the plaintiff will be entitled to a recovery at your hands for the full amount of this check with interest. But if you find that there was a warranty,—in the sense in which I have explained that term to you, of the soundness of this horse, and that this horse was unsound, then your duty is still not finished. You will then have to proceed to make another inquiry, and that is as to the question of fraud.

Where a man warrants an article and afterwards sues for the price, and it is shown that the article is not as warranted, the purchaser may deduct a certain sum from the purchase price, which, in the absence of anything else, the law assumes to be the real value of the article as warranted. But he cannot undertake to rescind the sale and to return the article, even although there was a warranty, unless there was also fraud in the transaction. "If the defendant was guilty of fraud in the sale and warranty of the mare," say our Supreme Court, in a case which also turned upon the soundness of a horse, "the plaintiff had the right to rescind the contract, and upon returning or offering to return her, to recover back the price paid in an action on the case for deceit, or in an action of assumpsit, or case for fraudulent warranty. But if there was no fraud or deceit in the sale, the plaintiff had no right to rescind the contract for the alleged breach of warranty, and to return the mare without the defendant's consent." Now, you will see that, even if you find that there was a warranty in this case and if you find that this horse was really spavined, the defence which is now made to the whole of the plaintiff's demand, on the ground that the horses were returned to him, will not avail the defendant, unless you further find that this warranty was not only actual and express, but also fraudulent.*

In order to find that this warranty was fraudulent, you must find certain other facts. You will inquire: First, did Mr. Reber know of the fault of this horse? Second, did he fraudulently conceal it from the purchaser? Third, was his fraudu-

---

* Observe that no error is assigned specially to this part of the charge.
—REP.

Charge of Court below.

lent concealment the means of effecting the sale? And, finally, was the check given in ignorance of this horse's defect?

In other words, before you can affix fraud to this transaction, on the part of Mr. Reber, you must be satisfied in your own minds that Mr. Reber knew this mare was unsound; you must find that he wilfully concealed the defect in this animal from the purchaser; you must find that the purchaser relied upon his representations as to the qualities of the animal, and that the defendant gave the check on the faith of them. In order that there should have been fraud, there must have been knowledge on the part of Mr. Reber, and the purchaser must have been deceived by it. If the fault of the animal was such that he could not have been deceived by it, if he saw it or knew it, and could understand the effects of it, then he was not deceived by the plaintiff and there was no fraud on the part of the plaintiff.

If you do not find such fraud on the part of the plaintiff in this transaction, there may be yet one other case in which the defendant had the right to return the horses, and that was, if there was an agreement on the part of the plaintiff that, unless they should be as represented, or sound, he would take them back. If you find that there was such an agreement, and find also that the horse was spavined, then the return of the horses to the plaintiff will be a defence in this case. But if you find neither a fraudulent warranty, nor an agreement on the part of the plaintiff to receive back his horses, in case they should prove unsound, or one of them should prove unsound, then you have only one thing to do, and that is, to return a verdict for the plaintiff for the full amount of the claim, with interest from October 3, 1888.

The defendant requests the court to charge the jury:

If the jury believe that Reber said to Briel and Davis that the horses must come right, and that he was to be examined in Reading, and if not right, no sale, and if they find from all the evidence that he was afflicted with spavin when brought to Reading, the plaintiff cannot recover.

Answer: I charge you, gentlemen, that this is a correct statement of the law. You will have to find, Was, or was not the soundness of the horse warranted? If you find it was not warranted, you will have nothing more to do. If you find it

was warranted, you must then ascertain whether there was an agreement to take the horses back.[3]

—The jury returned a verdict for the plaintiff for $389.35. A rule for a new trial having been discharged, the defendant took this appeal, specifying that the court erred:

1. In the refusal of defendant's offer.[1]

2. In the manner of submitting the case; "the whole question raised by the tenor of the charge is based solely on warranty or no warranty, practically ignoring the evidence of fraud and the weight of that evidence in the case, and of sale or return of the horse on a conditional sale."

3. In the answer to the defendant's point.[3]

*Mr. Aug. S. Sassaman* (with him *Mr. J. H. Jacobs*), for the appellant.

*Mr. C. H. Ruhl* (with him *Mr. Daniel Ermentrout*), for the appellee.

Counsel cited: Freyman v. Knecht, 78 Pa. 141; Kase v. John, 10 W. 109.

OPINION, MR. JUSTICE WILLIAMS:

This was an action by the payee of a check against the maker. The defendant denied that the check was given by him for his own debt, and asserted that it was given, at the instance of the payee, for a debt alleged to be due him from one Briel, when in fact no such debt was due him.

The facts disclosed by the evidence are that Briel was a dealer in horses from Brooklyn, N. Y., buying stock for shipment to his place of business. Reber lived a few miles from Reading, and had horses for sale. The defendant had a stable at Reading, at which Briel collected his purchases. On the third day of October, 1888, Briel went to look at Reber's horses with a view to purchase them. One of them appeared to be sound, but the other had a swollen joint, and he expressed a fear that it had a spavin. Reber asserted that it was sound, that the swelling was caused by a recent kick, and that the joint would be seen to be free from spavin as soon as the swelling should disappear. So far, the parties agree in their versions of what took place at Reber's, but beyond this point there is a

wide divergence. The plaintiff says the bargain was concluded on the spot, and that nothing remained to be done to entitle him to the price of the horses, except to deliver the horses to the purchaser at defendant's stable. The defendant on the other hand, testifies that the bargain was not closed; that Briel, fearing the horse with the swollen joint had also a spavin, was not willing to take it without more examination than he could give it at the time, nor upon the warranty of Reber which was offered him; that the horses were brought that night to Reading, to enable him to make a final examination of the lame one, which he made, and after which he promptly notified the plaintiff of his decision not to take it.

The first assignment of error is to the rejection of an offer to prove the fact that he gave notice to Reber early on the morning of the fourth of October that he found the horse unsound, and could not therefore take it. The objections made to the offer were that it was irrelevant and immaterial; the court sustained them, and excluded the evidence. This was wrong. The defendant's version of the arrangement made with Reber required him to make known the result of his examination, and his decision in regard to the purchase of the horse. A failure to do this would naturally have been taken as an acceptance of the horse, and would have been an important circumstance corroborative of the plaintiff's position that the bargain had been completed before the delivery of the horses at defendant's stable. Having given his own version of the arrangement, it was important to show that he had complied with it in good faith.

The second assignment relates to the charge as a whole, and complains that so much importance was given to the subject of warranty as to divert the attention of the jury from the other questions in the case. On looking over the charge, we are led to think that the learned judge, in his effort to make the jury fully understand the nature and effect of a warranty, inadvertently overlooked what was an important preliminary question of fact, viz., what was the arrangement entered into by the parties while together at Reber's place? The plaintiff claimed that it was a sale; the defendant insisted that it was an agreement upon a price to be paid on condition that, after a careful examination, he should decide to buy. If the latter

was the correct version, that was an end of the plaintiff's case, and the defendant had a right to the judgment of the jury upon this preliminary question. If they should find against him, then, but not otherwise they must enter upon the questions which the learned judge so fully presented to them. There is, however, reason to apprehend that the jury regarded the preliminary question as already disposed of by the court, and understood that, acting upon that basis, they were only to inquire into and pass upon two questions of fact: First, had Reber warranted the horses to be sound when he knew that one of them was unsound? If so, this was a false warranty that relieved the defendant from his obligation to take the horses. Second, if no false warranty was made, had Reber agreed at the time of the sale, and as part of its terms, to take the horses back, if one of them was found to be unsound? If so, this authorized the return of the horses, and made a good defence.

The jury may well have thought these the only questions submitted to them by the court, and rendered their verdict on that basis. If so, the primary ground of defence was overlooked. The testimony of Davis and of the defendant was to the effect that Briel was not to take the horses, if he concluded that the one with the swollen joint had spavin. If this was true, no sale was made; the delivery at defendant's stable was for examination, upon the result of which Briel was to decide whether to take the team at the price fixed or not; and the plaintiff, having had prompt notice of the result of the examination and of Briel's decision, had no claim upon any one for the price of the horses. This question should have been clearly submitted to the jury.

The judgment is reversed, and a venire facias de novo awarded.