## Webb *v.* Lees et al., Appellants.

*Master and servant—Wages—Contract—Evidence.*

Wages are paid at stipulated times, weekly, monthly, or otherwise, according to custom or contract.   It is not the custom between employers and employees to take or give formal receipts, especially for weekly wages, and therefore the books and accounts, where there is no reason to suppose they are improperly kept, and, above all, the acquiescence of the parties for any continued length of time, are usually the best evidence attainable of the contract.

Where an employee is shown to have accepted wages from week to week for a period of months at a rate in accordance with his own returns of time, it is convincing evidence that he was to be paid according to time ; and not only should it be so set before the jury, but the jury should not be permitted to disregard it, in the absence of an explanation equally clear, complete and convincing, and made out by evidence that does and ought to carry conviction.   McConnell's Appeal, 97 Pa. 31, applied.

*Charge of court—Adequate presentation of testimony.*

Where a witness has testified directly as to the terms of a contract in dispute, in confirmation of the defendant's contention, it is not a full and adequate presentation of his testimony to say to the jury that, if they believe his evidence, it may throw some light upon the plaintiff's motive and conduct.

Argued Feb. 1, 1892. Appeal, No. 10, July T., 1891, by defendants, Joseph Lees and John S. Lees, trading under the firm name of James Lees & Sons, from judgment of C. P. Montgomery Co., Dec. T., 1888, No. 42, on verdict for plaintiff, John Webb. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for alleged balance of wages.

On the trial, before SWARTZ, P. J., plaintiff testified that the terms of his employment were $35.00 per week, whether the mill ran or not; and extra pay for all time over 60 hours made by the mill in any week. Defendants' evidence was to the effect that plaintiff was to be paid at the rate of $35.00 per week of 60 hours for such time as he actually worked. Part of the evidence of the plaintiff was a letter from defendants in which they said: "Your wages were to be $35.00 as we understood it." Defendants introduced their time books and pay rolls in evidence, and showed that plaintiff had regularly handed in his time as did other employees, and was paid accordingly, and that he had never made any objection. Plaintiff's explanation of this was, that he had been requested to keep the terms of his contract from other employees; that he had spoken to defendants about money being due him, and they had said that would be all right. He also stated that he had given up a six months' engagement at Steer Mills to come to defendants. Defendants offered in evidence the deposition of the treasurer of the Steer Mills, of which the answers to the 7th and 8th interrogatories were ruled out. [1] These interrogatories and the answers thereto were as follows:

"Seventh interrogatory. On the former trial of this case John Webb testified in substance that he could have remained in the service of the company you represent. Is this true, or not? Answer. I never gave him any assurance as to future employment. Eighth interrogatory. What was the character of the work done by John Webb and how did he discharge his duties? Did he give satisfaction? State all about him fully? Answer. He did not prove satisfactory in his charge of the mill."

The witness Barker, beside the testimony indicated in the charge of the court quoted below, also testified that the verbal

contract between plaintiff and defendants was, that the plaintiff was to be paid at the rate of $35.00 per week of 60 hours.

The court below charged, in part, as follows: ["Now, it is said in this case, that it is unreasonable for the jury to say that the plaintiff, Webb, would make a contract such as is alleged by the defendants.

"You have heard the arguments of counsel and you will give that consideration. He says that he had employment in Rhode Island, at Providence, and was receiving a certain compensation there and that he had a six months' engagement. You have heard what the company in Rhode Island state as to that employment, and the plaintiff claims through his counsel that it is unreasonable to suppose he would quit that employment and seek one with these defendants under such unfavorable terms as he now says he would have if the defendants' version of the contract is to be believed; that he had a large family and that he would not have brought this family here with such an uncertain contract, and that therefore it is unreasonable, that you are to find that it is unreasonable that any such contract would be made as alleged by the defendants.

"In this connection, however, you must not only take his own testimony, but any other testimony in the case that may have weight. If you believe the evidence of the witness Barker, that evidence may throw light upon his motive and conduct, because, as I recollect the evidence of Mr. Barker, he says he remonstrated with Mr. Webb, claimed that this kind of contract that he was making or had made, or the terms that were spoken of were not proper, or words to that effect; that a superintendent ought not to make such an arrangement or engagement; that Webb answered that this was a good firm, or words to that effect, and as he understood they shut down only on the Fourth of July and Christmas, that he could do better under this kind of contract than the contract that he now alleges that he had. You will remember the testimony of Mr. Barker, and, if you believe it, give it proper weight."] [3]

["One of the facts relied upon by the defendants is that the plaintiff gave in his time and received payment in accordance with the time book; that he received for the week he served more than 60 hours more than $35.00 per week, and less when he served less than 60 hours. Because the contract was entered

in the time book by the defendants according to their version
of it, this does not make the contract; but when the plaintiff
handed in his time and received pay according to such time, it
is a fact to be considered by you, which may give light in de-
termining what the contract really was, and it is for that pur-
pose only that that evidence was permitted to be given. You
have heard all that was said about that. You will, however,
be careful to take the plaintiff's answer to it, because he said
that he gave in that time for the purpose of showing, not what
time he made particularly, but the time of the mill. If that
was his purpose and object in showing how long this mill was
running, and turning in time for that purpose, then this fact
would seem to lose its weight, or at least much of its weight,
perhaps all of it, as weighing against the plaintiff."] [6]

*Errors assigned,* among others, were (1) excluding the an-
swers to the interrogatories as above, quoting both; (3 and 6)
the portions of the charge as above, in brackets.

*Charles Hunsicker,* for appellants.

*N. W. Larzelere, M. M. Gibson* with him, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 2, 1892:

The first assignment of error must be sustained. Plaintiff
testified that he had had a six months' engagement at the Steer
Mills, which he had given up to enter defendants' service, and
on this fact it was argued to the jury and submitted to them
in the charge, that it would be unreasonable to suppose he
would have given up that position for a contract such as de-
fendants alleged he made with them. The truth of his alleged
agreement with the Steer Mills was therefore relevant to the
issue, and the answers of the treasurer of the mill company to
the 7th and 8th interrogatories bore directly on this subject.
They should have been admitted.

The third assignment must also be sustained. The plaintiff
and defendant had given conflicting testimony as to the contract,
and, after stating to the jury the argument that it would be
unreasonable to suppose plaintiff would do as defendants claim-
ed, the learned judge told the jury also to consider any other
testimony in the case, and added " If you believe the evidence
of the witness Barker, that evidence may throw light upon his
(plaintiff's) motive and conduct." Now Barker had testified

directly as to the contract. Whether his testimony was accurate or not was a question for the jury affecting his credibility, but if they believed him, he proved the contract as defendants alleged it, affirmatively and conclusively, and to say of his testimony that it might " throw light " on plaintiff's motive and conduct was not a full and adequate presentation of its bearing on the case. It tended to divert the attention of the jury from the effect of Barker's testimony on the very point of the issue, the contract actually made by the parties, to its effect on the mere argument what it was reasonable to suppose the plaintiff would have done.

We are obliged also to hold that the fact of plaintiff's turning in his time and taking his pay by hours, and its bearing on the issue, were not adequately presented to the jury. They were told that it was " a fact to be considered by you, which may give light in determining what the contract really was. . . . You will however be careful to take the plaintiff's answer to it, because he said that he gave in that time for the purpose of showing, not what time he made particularly, but the time of the mill, " etc. This was not only passing too lightly over what should have been the controlling evidence in the case, but immediately neutralizing its effect by an apparent judicial sanction of an explanation that does not explain. Plaintiff's version of the contract was that he was to have $35.00 a week, without regard to the hours he worked. It is hardly consistent with this that for the weeks in which he worked more than sixty hours he drew more than $35.00 pay, but even if this be explained as overwork specially overpaid, and therefore not absolutely irreconcilable with the contract alleged, there is no explanation at all of the acceptance for a week in which there were less than sixty hours of work, of an amount of pay the exact proportion of $35.00 that the number of hours turned in by plaintiff himself were of sixty.

Wages are paid at stipulated times, weekly monthly or otherwise according to custom or contract. It is not the custom between employers and employees to take or give formal receipts especially for weekly wages, and therefore the books and accounts where there is no reason to suppose they are improperly kept, and above all the acquiescence of the parties for any continued length of time are usually the best evidence attain-

able of the contract. Courts and juries must recognize that business is done in this way. When therefore an employee is shown to have accepted wages from week to week for a period of months at a rate in accordance with his own returns of time, it is convincing evidence that he was to be paid according to time and not only should it be so set before the jury but the jury should not be permitted to disregard it, in the absence of an explanation equally clear, complete and convincing, and made out by evidence that does and ought to carry conviction. The principle of McConnell's Ap., 97 Pa. 31, applies with great force to such a case. The sixth assignment is sustained.

Judgment reversed and venire de novo awarded.