## Sears *v.* Birbeck (et ux., Appellant).

376

Argued January 22, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*Carlon M. O'Malley,* with him *J. Julius Levy,* for appellant.

*George Morrow,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 23, 1936:

On November 28, 1928, Harry C. Birbeck and Hannah Birbeck, husband and wife, signed a judgment note in which they promised to pay David D. Sears, or assigns, one day after date, $5,000, with interest and attorney's fee of 10% for collection. Two days later, judgment was entered against the defendants. Execution was issued and levy made upon the household goods of Mrs. Birbeck. Thereupon she filed a petition to open the judgment, alleging that she was a married woman when

she signed this note and that she signed it as a guarantor or surety for one Karl Rogowski, to whom Sears actually made the loan, and that she, Mrs. Birbeck, received no part of the proceeds. The rule to open judgment was made absolute. A trial was had. The verdict was for plaintiff. This appeal followed.

The plaintiff testified that the judgment note in question was brought to him by Rogowski. He talked to Mrs. Birbeck after he got the note and she admitted it was her signature. He was asked if Mrs. Birbeck ever asked him for a loan of $5,000 prior to the signing of this note. He answered: "No." He was asked on cross-examination: "The first time you met Mrs. Birbeck with reference to this particular note was on the day that you came to her home to present her with a check for five thousand dollars?" He answered: "Yes." He testified the check was presented to her, that she endorsed it, and that he gave the check to Karl Rogowski. He accompanied Rogowski to the bank where the check was cashed. Rogowski gave him $750 out of the proceeds.

Mrs. Birbeck testified to the fact that she was a married woman on the day the note was signed, and that on that day Rogowski (who was the president of Bordeaux Mineral Water Company, later defunct, which employed her son-in-law) came to her house to obtain her signature to the judgment note. Shortly thereafter Mr. Sears came to her home. She testified that she said: "I don't know anything about notes," and that Rogowski said: "It is only for accommodation; it will be paid in sixty days." She then signed it. She received nothing from the proceeds. She never asked Sears for any loan. She was not previously acquainted with him. Sears brought her the check for $5,000 and she endorsed it and Sears took it. She testified further that after the check was endorsed by her and delivered to Sears, Rogowski told her he would give her 1,000 shares of stock in the Bordeaux Mineral Water Company "as collateral security." These she never received. She was asked on cross-exam-

ination: "Q. Why did you give the note to Mr. Sears? A. For Carl Rogowski. Q. What did he want the money for? A. Well, he needed it, I suppose." It was testified that her husband, one of the defendants, was unable to attend the trial because of the infirmities of age.

Plaintiff was recalled to the stand and testified that when he cashed the check and delivered the $5,000 to Rogowski, that the latter turned over to him $750. His explanation was: "He was paying me back money that I advanced him on the five-thousand-dollar note the night before Thanksgiving." This "advance" was made before the $5,000 note was signed by Mrs. Birbeck. Sears was asked by defendant's counsel: "You told us this morning that Mrs. Birbeck never came to you and asked for this loan?" He answered: "Yes, sir." Later the witness said: "I advanced him that [$750 to Rogowski] after I had the note." He was asked: "Did you ever say that you wouldn't 'loan Rogowski any money until I have Mrs. Birbeck's judgment note?' A. I might have said that."

The witness was then asked whether or not in his deposition of February 1, 1932 [on the rule to open judgment], the following question was asked and whether he made the following answer: "Did you loan Carl Rogowski money as a result of this transaction on the strength of the guaranty or surety of Hannah Birbeck?" Answer (in the deposition): "I wouldn't loan Rogowski any money until I had Mrs. Birbeck's judgment note." He answered: "I think I did." He then explained in answer to a question by his own attorney, that the loan he referred to was the $750 loan to Rogowski.

Defendant, having satisfactorily explained the absence from the trial, of Karl Rogowski, put in evidence his deposition, taken in 1932. Rogowski explained the origin of this note as follows: "I called Mr. Sears on the telephone and asked him to come over and see me at the Hotel Casey . . . and I asked him if he would discount a note signed and guaranteed by Mrs. Birbeck and

Mr. Birbeck and by the Bordeaux Mineral Water Company of Stroudsburg. I had given Mr. Sears a note and Mr. Sears suggested or said he would not discount the note unless Mrs. Birbeck and Mr. Birbeck would sign a different note for that purpose, so we went up to Mr. Birbeck's and Mrs. Birbeck's, delivered the judgment note, Mrs. Birbeck signed and Mr. Birbeck signed." "Q. And did he say he would loan you any money on any condition? A. Only on the condition that Mrs. Birbeck would guarantee the loan. Q. And did he require any particular type of note? A. It was a judgment note." He testified that after the note was executed Sears "made a check out for five thousand dollars, we went back to Mr. and Mrs. Birbeck's. Mrs. Birbeck endorsed the check and we, Mr. Sears and myself, went to the bank . . . and the transaction was finished in the bank. . . . Mr. Sears cashed the check at the bank and he gave me the money due to me. . . . Q. And after he [Sears] received the cash did he turn any money over to you? A. Yes. Q. What amount? A. I would not say definitely, I do not remember if I paid him a bonus of five hundred or seven hundred and fifty dollars, but I paid him a bonus. . . . To the best of my recollection [it was] five hundred dollars." He testified that Mrs. Birbeck never received any part of the proceeds of that loan. He was asked: "To the best of your knowledge, did Mrs. Birbeck ever receive anything in consideration for her endorsement on the check in question, or her endorsement on the judgment note? A. No, not in this case. Q. And the check that you have already spoken about in the amount of five thousand dollars was handed over in consideration of the five-thousand-dollar judgment note, was that right? A. Correct." He testified that he asked Mrs. Birbeck for an accommodation and that was the reason she signed the note. Rogowski testified: "He [Sears] put it [the check] on the table, she endorsed it and he took the check back." He testified that "for this accommodation I did not give her any-

thing and I didn't promise her anything. . . . I know the true facts about it." He denied that Sears had said to Mrs. Birbeck, "I am giving you this money and expect you to pay for it." He testified that "for this note transaction she [Mrs. Birbeck] didn't receive any stock." He testified further as follows: "I asked her to guarantee a payment of five thousand dollars, she considered it and she says—Mr. Birbeck didn't object from the beginning, but Mr. Birbeck thought he would have a hard time persuading Mrs. Birbeck to sign, and I talked to her and finally she says she would do it, accommodate me, to sign the note."

On rebuttal Sears denied that Rogowski had said in his presence at the Birbeck home that this note was for accommodation. He admitted that the check was taken by him to the Birbeck home on November 30th, endorsed by Mrs. Birbeck, and cashed at the bank the same day.

There is in this record abundant evidence, even from the plaintiff himself, to warrant a finding that Mrs. Birbeck signed the note merely as an accommodation for Rogowski and that Sears well knew it. However, the case is for the jury, subject to the duty of the court to grant a new trial if a verdict is "plainly contrary to the evidence": *Duane v. Miercken,* 4 Yeates 437, 440. (See *McGlinn Distilling Co. v. Dervin,* 260 Pa. 414, 103 A. 872.) Appellant complains of a ruling by the trial judge on the matter of evidence and contends that the charge was, inter alia, "erroneous, inadequate and prejudicial."

The second assignment of error is based upon the court's overruling defendant's objection to the question put to the witness David D. Sears, as follows: "Q. At the time you gave Rogowski this seven hundred and fifty dollars was there any understanding at that time how this money was to be paid back to you and when? A. Mr. Rogowski said"—defendant's counsel then objected "to what Rogowski said unless it was in the presence of Mrs. Birbeck." The court overruled the objection. Defendant excepted. The witness answered: "Mr. Rogow-

ski said he had to have money for his payroll. He brought me the judgment note for five thousand dollars and wanted me to give him the money, and I said, 'No, I am loaning the money to Mrs. Birbeck.' "

An examination of the record shows that Sears does not claim at any time that he told Mrs. Birbeck that he was making the loan to her. In fact, he admitted that Mrs. Birbeck never asked him for a loan of $5,000. The only place in the record where the witness Sears claims he ever declared to anyone that he was loaning the money to Mrs. Birbeck was in the excerpt above cited where he testified he *told Rogowski* that he was loaning the money to Mrs. Birbeck. This was a self-serving declaration made to a party who was neither the defendant nor the latter's agent. As this court said in *Taylor v. Adams,* 2 S. & R. 534, 536, in reference to the rejection of a self-serving declaration: "Nothing can be more clear than a person shall not be permitted to make testimony for himself in his own cause." The second assignment of error is sustained.

The third assignment of error is based on the following excerpt in the charge of the court: "To recapitulate, if you believe that this was a loan by Mr. Sears to Mrs. Birbeck, as the papers in the case show and as Mr. Sears testifies, if you believe that Mr. Sears loaned the money, as I told you, then your verdict is for the plaintiff for the amount of five thousand dollars with interest, which amounts to $1,350, a total of $6,350." The vice in this part of the charge is the following phrase: "as the papers in the case show and as Mr. Sears testifies." A lawyer might understand that the court meant that *prima facie* the papers indicate that this was a loan to Mrs. Birbeck; but the phrase, as the court used it, undoubtedly led the jury to believe that the very papers themselves *showed,* i. e., *proved,* that this was a loan to Mrs. Birbeck. One of the recognized definitions of the verb "show" is "to make apparent or clear by evidence, testimony or reasoning; to prove, demonstrate" (Web-

ster's New International Dictionary). When a person signs a note as surety for another, the note when put in evidence would, if no evidence was offered by the maker tending to show that she made it as surety, prove that the maker legally owed the holder the money promised. But here, the maker claimed that the note was made by her not as security for a loan to her but as guarantor for another. The court should not have stated without further elucidation that the "papers in the case showed that this is a loan by Mr. Sears to Mrs. Birbeck." The note, when received in evidence, simply cast upon Mrs. Birbeck the burden of proving that she was merely an accommodation maker. This should have been carefully explained to the jury. The jury received no specific instruction whatsoever on the subject of burden of proof. That phrase nowhere appears in the charge. It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. Such clarification is impossible without clear instruction as to the burden of proof, the shifting of the burden in certain states of the record, and if plaintiff has offered prima facie proof of what he has pleaded, the duty then devolving on the defendant to come forward with evidence. See *Henes v. McGovern*, 317 Pa. 302, 176 A. 503. The record discloses that Mr. Sears did not testify that this is a loan by him to Mrs. Birbeck; he said that the first time he met Mrs. Birbeck with reference to this note was when he came with a check for $5,000. This was November 30th; the note was signed November 28th. He testified that he talked to Mrs. Birbeck after he got the note and that "she said it was her signature." He was asked by his own counsel this question: "What was that for? What I mean is, was it a loan or for horses or automobiles or what?" He answered: "It was a loan." It must be noted that he didn't say it was a loan to Mrs. Birbeck. His testimony is equally consistent with defendant's theory that it was a

loan to Rogowski as with plaintiff's theory that it was a loan to Mrs. Birbeck. There is additional error in this excerpt, in the phrase: "if you believe that Mr. Sears loaned the money, as I have told you, then your verdict is for the plaintiff for the amount of five thousand dollars." What the court should have said was: "if Mr. Sears loaned the money to Mrs. Birbeck." The excerpt cited was not cured by what followed in the charge, to wit: "On the other hand, if you believe that Mr. Sears knew that this was merely a loan which was to be made to the water company, and that this was a means of making Mrs. Birbeck liable for that loan to the water company, then your verdict is for the defendant." There is no evidence whatever in the record that this was a loan to the water company. The third assignment of error is sustained.

The fourth assignment of error is that the charge was prejudicial "in that the court laid favorable emphasis upon the plaintiff's evidence and ignored important evidence upon the part of the defendant." While the trial judge is not bound, in reviewing the evidence, to balance his charge mathematically between the evidence adduced by the defendant, it may become error for him to review the evidence of one side and ignore vital countervailing evidence. In this case the testimony of Rogowski was highly important. It was he who brought the plaintiff and defendants together in this matter. He was present when the note was executed. He had no interest in the outcome of the litigation in which his deposition was taken. Yet the only reference the court made to Rogowski's testimony is the following: "There is a statement by the president of the company in the depositions that were offered in evidence here to the effect that this was a loan to the company; the exact statement I do not recall; the depositions were read; but it would seem from the statement there that he told Mr. Sears that it was a company loan and that Mrs. Birbeck was merely being surety." This review of Rogowski's depositions is both

inadequate and erroneous. There is no testimony in the record that this was a loan to the company. Rogowski in his depositions unequivocally stated that Mrs. Birbeck signed this note "because she wanted to help me out," and that the only conversation at the time was that "Mr. Sears told her" that if "I [Rogowski] would not pay the note, she would be responsible for it." He also testified that Mrs. Birbeck never received anything for signing the judgment note, but that he paid Sears a bonus of $500 or $750 for making the loan to him. He was asked on the depositions: "You say positively that she [Mrs. Birbeck] guaranteed the note for whom? A. For me." This testimony of an apparently disinterested witness went to the very vitals of this case, and in reviewing the evidence, the trial judge should have quoted it with reasonable accuracy and not passed over it so lightly. In *Webb v. Lees,* 149 Pa. 13, 24 A. 169, this court said, in an opinion by Mr. Justice MITCHELL: "We are obliged also to hold that the fact of plaintiff's turning in his time and taking his pay by hours, and its bearing on the issue, were not adequately presented to the jury. They were told that it was 'a fact to be considered by you, which may give light in determining what the contract really was. . . .' This was not only passing too lightly over what should have been the controlling evidence in the case, but immediately neutralizing its effect by an apparent judicial sanction of an explanation that does not explain." Section 670 of 64 *C. J.,* page 793, lays down this principle: "Instructions which ignore or exclude from the consideration of the jury evidence which is competent and material to the issues involved are erroneous." The fourth assignment of error is sustained.

The fifth assignment of error is that the charge of the court was erroneous, inadequate and prejudicial. The following is an excerpt from the charge: "On her [Mrs. Birbeck's] cross-examination she makes various statements which you will remember; that she understood

she was to pay this money, and that she did on two occasions pay the interest thereon, and that she never found out until later when she went to the lawyer and the lawyer said she should not pay the money." What Mrs. Birbeck testified on cross-examination was: "I didn't know whether I would have to pay the note or not. . . . I supposed I would." She was asked: "You paid the interest on it, didn't you? A. Yes, I paid two years' interest." Later, on cross-examination she testified: "I wasn't getting any money from Mr. Sears. Q. Why did you give the note to Mr. Sears? A. For Carl Rogowski." She also testified that she made a complaint to Sears about paying the interest. In answer to the question: "Why did you pay the interest?" she replied: "Because I thought I had to." She testified that she later went to her lawyer and "he wouldn't let me pay the interest any more."

Appellant's counsel argues with much cogency that from the court's statement in reference to Mrs. Birbeck paying the interest the jury might have concluded that she was estopped from pleading her inability to contract as a surety. The charge should have carried an explanation that Mrs. Birbeck's paying interest on this note did not preclude her from setting up the plea of legal disability. If in signing this note she attempted to assume an illegal obligation, no subsequent act of hers in respect to it could make it legal. The jurors should have been clearly instructed that even if Mrs. Birbeck did pay interest on this note, either in ignorance of her rights or otherwise, yet if they were convinced by the fair preponderance of the evidence that she signed the note as a guarantor or surety for Rogowski and not for the benefit of her own estate, she did not have to pay it, and the verdict should be for the defendant. It is aptly said in 10 *R. C. L.*, page 738, section 55, that "if the contract [of a married woman] relates to a matter concerning which the common law disabilities continue, so that the contract is void for want of capacity or power

to make it, the doctrine of estoppel cannot be invoked."

The Act of June 8, 1893, P. L. 344, section 2, explicitly provides that a married woman "may not become accommodation endorser, maker, guarantor or surety for another." Though a married woman should aid the payee of a note she executed in his attempt to make it appear that the note was for her own benefit, the law would look beyond appearances to the realities of the situation. The law, in forbidding a married woman to become surety for another, protects her not only against others who may importune her to become their guarantor or surety—it protects her even against herself.

In his charge the trial judge said: "In this case the proposition of Mr. Sears is that on the day in question he saw a note that was made out by Mr. and Mrs. Birbeck to him, and he was asked to advance cash on that note; that Mrs. Birbeck was getting certain stock of a company, and to make sure that the transaction was as it was represented to him, he made the check out to her. He went to her house with the president of the company, and in his presence the check was endorsed by Mrs. Birbeck to the president of the company." This part of the charge was misleading and erroneous. The mere making out of a check to Mrs. Birbeck was not sufficient "to make" Sears "sure" that the loan was being made to her. She had not represented anything to him for she and he had not even met when Sears made out his check to her. This excerpt from the court's charge could easily have led the jury to believe that the mere fact that the check was made out to Mrs. Birbeck and that she endorsed it made her liable on this note. Such, of course, is not the fact. There was a duty resting upon Sears, in dealing with a married woman in this matter, to find out whether or not the loan was being made for her benefit. It is well said in section 339 of 13 *R. C. L.*, page 1301: "In all ordinary circumstances there must be some degree of active diligence on the part of a lender to ascertain the purpose for which a woman he knows to be married is

borrowing money." In the instant case, not only did Sears not show any such diligence, but it ought to have been obvious to him that Rogowski was borrowing this money and that Mrs. Birbeck was acting as surety for him. It was Rogowski who brought the note to him; it was Rogowski who took him to the Birbeck home; it was Rogowski who actually got the proceeds of the check at the bank in the presence of Sears, and it was Rogowski who immediately gave Sears $750. There is ground for the belief that in this case the making out of this check to Mrs. Birbeck was mere "window-dressing" so as to make it appear that she was getting the proceeds of the check. The fact is, of course, that she did not get a dollar of the proceeds. In a case of this character, "window-dressing" may in itself furnish proof in support of the very fact that the parties are attempting to conceal.

It is well said in 13 R. C. L., section 340, page 1302: "If it appears that an elaboration of outward details was, as both parties knew, but a cloak to cover an attempt to conclude a contract of suretyship in violation of the statute, the indirection in method by which they have proceeded will not avail to save the transaction. Whatever device may be resorted to for the purpose of evading the statute, if the person seeking to enforce the contract knew of, or participated in, the design, or purposely remained ignorant, courts will deal with the transaction according to its substance, regardless of the form in which it may have been disguised." As was aptly said by Mr. Chief Justice SHAW in *Com. v. Hunt,* 45 Mass. 111: "The law is not to be hoodwinked by colorable pretences; it looks at truth and reality through whatever guise it may assume."

The court further said in its charge: "To corroborate his [Sears's] testimony he shows by Mrs. Birbeck herself that she was already interested in this company, and she claims that she was to get more stock, but it was merely as collateral security for her endorsement." The

phrase "she was interested in this company" should have been explained to the jury. Mrs. Birbeck did testify that previous to the transaction now being reviewed she had bought stock in this company. But the "more stock" she was to receive was, according to the witness, promised her after the note was executed and was to be given to her only as collateral security for the loan. Furthermore, the court should have explained to the jury, even if Mrs. Birbeck did receive a promise of collateral security, or even received some stock as a bonus, or even a bonus itself, for executing this note, that fact would not preclude her from making the plea of legal disability. The law says that a married woman cannot become an accommodation endorser for another. It does *not* say that she can become such an endorser for another *if* she receives collateral security or a bonus for doing so. The disability which the law casts upon a married woman in making a note as security for another person is an *absolute* disability. Nothing that she can say or do can remove it.

The case of *Pine Brook Bank v. Kearney,* 303 Pa. 223, 154 A. 365, was one where a married woman had signed a judgment note for $5,000. Attached to the note was her certificate, executed by her, in which she said: "I . . . do hereby certify that this note is given for my own personal benefit, and for the improvement of my separate estate, and that I do not sign as accommodation endorser, maker, guarantor, or surety for any other person." The court below in that case decided that Mrs. Kearney was not precluded by that declaration from asserting that she had *in fact* signed the note as *surety* for another, saying: "If she [Mrs. Kearney] signed as principal and received money for her own benefit, she would be liable, and her certificate to the effect that the note was given for her own personal benefit would have merely evidentiary value. If, in fact, she signed the note as surety for John J. O'Hara, the certificate that she signed the note for her own special benefit, would still have only

evidentiary value, and if this certificate was untrue and if the bank officials who accepted the note in question knew it was untrue, its value as evidence would completely disappear." The court below further said: "A disability created by law cannot be removed by the disabled party's lying about it." The Supreme Court sustained the court below.

To the same effect was the case of *Murray v. McDonald*, 236 Pa. 26, 84 A. 579. In that case this court held that a wife is not estopped from asserting her right to have the judgment opened because she falsely certified on the face of the note that it was given for her own personal use and not as guarantee or surety for any other person, and we there reiterated the principle that the signing of a note by a wife as surety for her husband, or anyone else, not only contravenes public policy but also offends against a positive statute.

In these times when we are all accustomed to seeing women exercise so many legal privileges, even the privilege of voting, and possess so much freedom of contract, jurors are apt to lose sight of the fact that married women have no more legal right to enter into contracts of guarantee or suretyship for any other person than they had at common law, i. e., they have no right at all to do such a thing. In cases like the one now before us it is particularly the duty of the trial judge to make it clear to the jurors that the law positively prohibits a married woman from becoming a guarantor or surety for another person, and that if such other person attempts to cloak the transaction by making out the check in the name of the married woman and having it endorsed by her, or resorts to any other device or declaration, either with or without the connivance of the married woman herself, to make it appear that the note was for the married woman's own personal benefit when in fact it was not, the jurors in their deliberations must penetrate such disguises and determine the true nature of the transaction. If they are convinced by the evidence that the married

woman in signing the note was acting as guarantor or surety for another person, that fact makes the note she signed a nullity and by their verdict they should say in effect that she is under no obligation to pay it.

A trial judge's charges which are inadequate or not clear, or which tend to mislead, are well recognized grounds for reversal: *Reber v. Schitler,* 141 Pa. 640, 21 A. 736; *Peirson v. Duncan,* 162 Pa. 187, 29 A. 733; *Pa. Canal Co. v. Harris,* 101 Pa. 80; *Relf v. Rapp,* 3 W. & S. 21; *Stukey v. Rissinger,* 31 Pa. Superior Ct. 3.

The fifth assignment is sustained.

The seventh assignment of error is based on the court's refusal to grant a new trial. It is sustained.

The judgment is reversed with a venire.