## Wilkes-Barre Deposit and Savings Bank, Appellant, *v.* Hermann et al.

Argued April 10, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Robert J. Doran,* with him *Frank S. Jones,* for appellant.

*Roy B. Pope,* with him *E. F. McGovern,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 25, 1939:

On June 20, 1924, Mrs. Fred W. Hermann, appellee herein, together with her husband, executed and delivered to appellant, the Wilkes-Barre Deposit and Savings Bank, a promissory note in the amount of $15,000, payable on demand. Security of fifty shares of stock in the Sun Amusement Company, and twenty-five shares of stock in the Metropolitan Theatre Company were given, and a joint collateral judgment note was executed for the sum of $10,000, payable one day after date. A cashier's check for $15,000 was given in exchange for the note, payable to M. E. Comerford, Treasurer of the Union Theatre Co. It was paid June 23, 1924. Comer-

ford is now dead, and the cashier who arranged the loan did not appear as a witness for either party. A judgment was entered on the $10,000 note. It was revived by amicable sci. fa. May 21, 1929, and again revived in the same way on May 22, 1934. During this time the original note of $15,000 was reduced by payments to a principal sum of $4,842.50. Negotiations were entered into between appellant and appellee and her husband, looking to a settlement of their obligations. Appellee and her husband agreed to give appellant, in full settlement, the proceeds of a mortgage given to the Home Owners' Loan Corporation in the sum of $4,800, and a second mortgage executed by both defendants on property owned by Mrs. Hermann in the sum of $1,200. To aid appellee in these plans, appellant paid taxes on the property amounting to $911.77. The negotiations collapsed and appellee in 1936 filed a petition praying for a rule to open the judgment entered on the $10,000 note. The court made the rule absolute, framing an issue for the jury; it returned a verdict in favor of appellee, finding that the note was an accommodation. Appellant's motion for judgment n. o. v. was denied.

At common law, generally, a married woman had no capacity to contract. If she endeavored to do so her engagements were entirely void. The legislature has removed almost entirely this impediment to her freedom through various statutes, withholding, however, certain powers from her. Under Section 2 of the Act of June 8, 1893, P. L. 344, she "may not become accommodation endorser, maker, guarantor or surety for another." Appellee's position is that this Section makes the accommodation note of a married woman absolutely void and not voidable merely; that any judgment entered thereon is void, and, consequently, that the doctrine of laches cannot apply. The case of *Bank v. Poore,* 231 Pa. 362, demonstrates that appellee's contention is wrong. Before discussing that decision, however, attention is called

to the words of the Act. She *"may* not" become endorser or surety—the interdiction is not positive or commanding. Prior to the Act her engagements of this sort were void. After the Act, circumstances may arise wherein she may be estopped to deny the validity of her act.

The Poore case illustrates this most forcibly. There a judgment had been entered against a married woman on an accommodation note, and her real estate was sold at sheriff's sale under that judgment. In an action of ejectment, contesting the title of the purchaser, the judgment was attacked as void, and it was alleged no valid title could be predicated upon it. The Court said, (at p. 365), speaking of the change effected by Act of Assembly: "The unlimited power over her property and the unrestricted right to make contracts have changed the former presumption that her contracts were void. A note or other obligation given by a married woman is now presumed to be valid, and if she alleges that it is invalid the burden is upon her to show that it comes within the exceptions to her right to contract made in the statute. It follows, and we have so held, that a judgment confessed by a married woman is no longer prima facie void; at most it is voidable and, on her application, may be set aside only when it appears to have been unauthorized by the act." As to attacking the judgment in a collateral proceeding, the Court said, at p. 366: "Such an attack can only be made when the judgment is void. If the judgment is voidable, . . . the defendants could only get relief by an application to the court to open or strike it off. Until such a proceeding was instituted, the payee, notwithstanding his knowledge that the note was given for a purpose prohibited by the act of assembly, had the right to assume that no attack would be made upon it. So far as the record discloses the judgment was valid and hence the sheriff's deed conveyed a good title to the purchaser."

This case has been followed by many others illustrating the voidable character of the obligation, and further

illustrating that the wife must proceed with diligence to assert her rights; otherwise great delay will defeat them, particularly when the processes of the court have been interposed to insure the stability of the judgment. Thus, in *Steltzer v. Beatty,* 64 Pa. Superior Ct. 350, judgment had been entered on an accommodation note, and the attack upon it was withheld for 17 years. There had been two successive revivals by amicable sci. fa. The Court said, referring to the laches of the married woman: ". . . she should be diligent to protect the right vouchsafed by the law. Having failed to make the effort reasonably expected of a person who executed papers of this kind, . . . and having permitted it to stand out against her for seventeen years without complaint, her disability [when the note was executed] will not now shield her and through it at this late date be permitted to disturb a judgment having on its face every presumption of regularity . . . If the integrity of judgments of record for so long a period are to rest on any reasonably safe basis, courts should not disturb them except on evidence free from any suspicion of laches and long standing knowledge of the petitioner's right."

The result in *McCullough v. National Bank of Union City et al.,* 127 Pa. Superior Ct. 452, would have been otherwise if an obligation of this sort is not merely voidable. If the note in that case had been regarded as absolutely void, the transfer by the bank of the married woman's deposit to satisfy it would have been invalid, and the court would have been bound to restore the money to her. The Superior Court held, however, that a new bank taking over the assets of the old bank, was not required to pay the deposit to her, though it assumed all the liabilities of the old bank. In so doing, it reversed the lower court's holding to the contrary.

The whole tenor of our decisions is to the effect that the married woman should be diligent to assert her rights. Her accommodation notes are not absolutely

void, but voidable merely, and the doctrine of laches will apply. This is the plain implication to be found also in *Murray v. MacDonald,* 236 Pa. 26, 30-31; and see *Pine Brook Bank v. Kearney,* 303 Pa. 223, 226. If we were to hold such notes absolutely, or prima facie, void under the Act which gives almost unlimited freedom to a married woman to contract, it would open the door to fraud and collusion, and create a rule fraught with serious difficulties to banking and commercial transactions.

The illustration given in the Poore case above, is one of the most striking. If the rule were otherwise, property could be sold on a sheriff's sale, pass through many purchasers' hands, and yet title thereto, could be ultimately destroyed by an attack on the judgment or note. It was not the intention of the legislature to place a married woman in a better position to avoid responsibility or to commit fraud than at common law, nor may she abuse the processes of the court to attain such an end. She cannot enjoy the enlarged rights of property and remain irresponsible for the ordinary results of her conduct. Incident to the powers given by the statute she has the capacity to be bound and estopped by her acts.

Here the delay has been more than twelve years; two amicable sci. fa.'s have been executed by appellee. The two most important witnesses who could have testified in this suit are dead or unavailable. It is contrary to public policy, as well as to the intention of the legislature, to permit that situation to arise. The doctrine of laches should be applied. What was stated in *Sears v. Birbeck,* 321 Pa. 375, is referable to the facts in that case. The doctrine of laches was not there presented, nor were there any amicable revivals of the judgment, and the married woman in that case acted promptly. There was no abuse of the processes of the court, as in the present case. By the issuance of a sci. fa. and judgment thereon, or by the filing of an amicable sci. fa., the validity

of the original judgment by confession is recognized and, in the absence of strong equitable requirements, its voidable character is lost.

The judgment is reversed and it is directed that the original judgment be reinstated against appellee in the court below on the note, with leave to have it reduced to such amount as may be due. Costs to be paid by appellee.