Randolph, Admr., Appellant, *v.* Campbell.

454

Argued September 29, 1948. Before MAXEY, C. J. DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Wray G. Zelt, Jr.,* with him *Alexander R. Curran,* for appellant.

*Francis H. Patrono,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 17, 1948:

This was an action in trespass for damages for the death of Charles N. Randolph allegedly due to the negligent operation of an automobile by the defendant. After a verdict was rendered for the latter, plaintiff asked for a new trial which was refused. This appeal followed.

At 11:30 P. M. on the night of April 20, 1946, the defendant was operating his own automobile on the National Pike, about three miles west of Washington, Pennsylvania. The road was of dry concrete thirty feet wide. Charles N. Randolph and three others were guests in the automobile. Witnesses estimated the speed of the car as from twenty-five to forty miles an hour. While the car was being operated around an eight degree curve to the left, and down a slight grade, the car went off on the berm of the road where it traveled for a distance of about one hundred and fifty feet without any change of speed, but, when the brakes were applied and a turn back onto the road was being made, the car turned over

on its side, throwing the occupants out on the road. Three of the guests who were in the rear seat were thrown through the top of the car and one of them, Charles N. Randolph, was fatally injured. The defendant claimed that a car was coming from the opposite direction with bright lights and these blinded him, causing him to drive the car onto the berm. He said the oncoming car appeared to be coming over onto the middle lane of the highway, and when the lights of the oncoming car no longer blinded him, he noticed on the berm of the road a pile of cinders, and in turning onto the highway to avoid the cinder pile he used his brakes and the car turned over.

The important facts in this case are these: (1) the defendant drove the car off the highway and onto the berm of the road; (2) he did not reduce his speed as soon as he got on the berm of the road. One with even the most elementary knowledge of driving knows that as soon as a car gets off the highway and onto the berm, it is the duty of the driver to immediately reduce the speed because if he does not do so the car is likely to tip over when it is driven back onto the highway. The reason for this is that the paved highway is usually at least an inch or two higher than the berm and this makes a barrier which the front wheel strikes as soon as the driver attempts to get back onto the highway. It acts as a fulcrum on which the car turns over, as happened in this case. Also, the berm is softer than the highway and the weight of the car compresses it and thereby increases the height of the concrete barrier which one of the turned front wheels strikes and all of this accelerates the tipping over of the car.

When the driver of this car got on the berm he traveled one hundred and fifty feet without any change of speed. Apparently he suddenly applied his brakes just as he turned back onto the highway. The momentum of the car was such that it turned over with sufficient force to throw three people through the top of it. Under

these facts the conclusion is inescapable that the driver of that car was guilty of negligence.

On this phase of the case the charge of the court was inadequate. The plaintiff was entitled to instructions to the effect that if the car was on the berm and the defendant did not reduce its speed when he attempted to go back onto the highway the jury would be justified in inferring the negligence of the defendant from that fact. The judge instructed the jury: "It is proper for your consideration as to whether or not that handling of the car was the conduct of a reasonable and prudent person. There does not appear to be any definite explanation as to why this car was permitted to run off the road for a distance of one hundred and fifty feet and continue along the road and finally be so handled that it turned over with such force that it threw three people through the top of it." The phrase "handling the car" was of such a general character as to be of little assistance to the jury in reaching a just verdict. The court did not say anything about the defendant's duty to reduce the speed when he found the car was on the berm. The jury must have gotten the impression from the instructions they received that the only thing, if any, on which they could predicate the defendant's negligence was his getting off the road for a distance of one hundred and fifty feet. The important thing was not the defendant's getting off the road; it was his failure, in that situation, to reduce his car's speed at once. The accident was undoubtedly due to the fact that the driver did not reduce the car's speed before he suddenly applied the brakes as the car was turned to get back on the highway. The court further charged: "If there was a blinding temporarily and unexpectedly, then the defendant is not to blame for that except that he must exercise care under the circumstances in bringing his car under control." This instruction focused the jury's attention on the fact of the defendant's "blinding temporarily by the oncoming car", and not on the fact of his attempting to get back on the

highway without any reduction of speed. His "blinding" did not prevent his knowing that he was on the berm and did not prevent him from reducing his speed at once. A careful driver would have done so.

The defendant's third point reads as follows: "Negligence cannot be imputed because of a driver's failure to perform a duty as suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and to act according to the exigency." The court answered it as follows: "That is affirmed, and perhaps there is some explanation due on that. If a person was operating a car under proper control and there was a certain momentary blinding on account of lights, and by reason of that an obstacle occurred so close ahead of him that he could not see, that he could not get stopped, he is not held to the high degree of care because of this sudden emergency, this situation arising in which he does not have time to think or reason, and even though he made a mistake he is not held to that degree of care which he is under normal conditions." The court thus again emphasized the factor of the blinding lights and ignored the much more important factor of the defendant's failure to reduce speed when the car was on the berm. The only part of the charge in which this fact was referred to was the following: "The testimony was that there was no change of speed even though these lights were encountered until he threw on his brakes at the side of a cinder pile and the car turned over, and from the description it appeared the car did not travel any farther, but that appears to have been after this blind spot had gone by. It is a question for you whether or not he used due care or, to say the same thing, whether there was negligence by failing to exercise any control either in anticipation of these lights or in failing to reduce his speed when the blindness did approach, and whether or not there was negligence in proceeding at the same speed until after this period of blindnss had passed and then suddenly throwing on his brakes when he found

himself near this obstruction when he was off the road, and that he was off the road at that time. The question is, was that the right operation of the car?" This instruction should have gone further and the jury should have been told *why* it was important for the driver to reduce the speed of the car after getting on the berm. When the court refers to the defendant's failure "to reduce his speed when the blindness did approach, and . . . in proceeding at the same speed until after this period of blindness had passed," one cannot determine whether the court is referring to the defendant's "failure to reduce speed" when he was still on the highway or his failure to reduce speed after he got onto the berm. It was important that the defendant reduce speed *both* when he was on the *highway* and when he was on the *berm*, but it was much more important for him to reduce his speed when he was on the berm.

The charge of the court did not sufficiently clarify the facts and issues in this case. We said in *Sears v. Birbeck*, 321 Pa. 375, 383, 184 A. 6: "It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. . . . A trial judge's charges which are inadequate or not clear, or which tend to mislead, are well recognized grounds for reversal: Reber v. Schitler, 141 Pa. 640, 21 A. 736; Peirson v. Duncan, 162 Pa. 187, 29 A. 733; Pa. Canal Co. v. Harris, 101 Pa. 80; Relf v. Rapp, 3 W. & S. 21; Stukey v. Rissinger, 31 Pa. Superior Ct. 3." We also said in *Commonwealth v. Malone*, 354 Pa. 180, 47 A. 2d 445: "When the issues in either a criminal or a civil case are not clarified in the judge's charge, the charge is of very little value in the administration of justice though it may contain no prejudicial error. A charge may be technically correct and yet be to the jury meaningless and useless."

The defendant's negligent operation of his car after he got on the berm and before he got back on the high-

way made its tipping over almost inevitable. That he must have been going at a high rate of speed is inferable from the fact that three passengers, including Charles N. Randolph, were thrown through the top of the car. The evidence in this case clearly made out a case of negligence on the part of the defendant. There have been many cases in the appellate courts in which the negligence of the defendant was clearly inferable from the facts of the accident. In *Robinson v. Township of Logan*, 90 Pa. Superior Ct. 139, the facts were that the plaintiff's car was being driven at the speed of fifteen to twenty miles per hour, at night, and met a car going in the opposite direction. The lights of the latter car blinded the driver of the plaintiff's car and he drove into a ditch at his right where he ran into a tree. There was no proof that there was not sufficient roadway for the passage of the automobile at the place where the accident happened and the court in sustaining a compulsory nonsuit stated: "We think it is clear that the accident occurred by reason of the negligent management of the plaintiff's car in the night time when the driver's eyes were blinded by the glare of the car coming in an opposite direction. He drove off the usually traveled track because he could not see where he was going with the result that the car was damaged." In *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, 32 A. 44, this Court said: "When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care." This is quoted with approval in *Durning et al. v. Hyman*, 286 Pa. 376, 379, 133 A. 568, and also in *Knox v. Simmerman*, 301 Pa. 1, 4, 151 A. 678.

The judgment is reversed with a venire.