## Commonwealth *v.* Malone, Appellant.

Argued April 8, 1946.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*W. Hensel Brown,* for appellant.

*John L. Hamaker,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 27, 1946: This is an appeal from the judgment and sentence under a conviction of murder in the second degree. William H. Long, age 13 years, was killed by a shot from a 32-caliber revolver held against his right side by the defendant, then aged 17 years. These youths were on friendly terms at the time of the homicide. The defendant and his mother, while his father and brother were in the U. S. Armed Forces, were residing in Lancaster, Pa., with the family of William H. Long, whose son was the victim of the shooting.

On the evening of February 26, 1945, when the defendant went to a moving picture theater, he carried in

the pocket of his raincoat a revolver which he had obtained at the home of his uncle on the preceding day. In the afternoon preceding the shooting, the decedent procured a cartridge from his father's room and he and the defendant placed it in the revolver.

After leaving the theater, the defendant went to a dairy store and there met the decedent. Both youths sat in the rear of the store ten minutes, during which period the defendant took the gun out of his pocket and loaded the chamber to the right of the firing pin and then closed the gun. A few minutes later, both youths sat on stools in front of the lunch counter and ate some food. The defendant suggested to the decedent that they play "Russian Poker".[1] Long replied: "I don't care; go ahead". The defendant then placed the revolver against the right side of Long and pulled the trigger three times. The third pull resulted in a fatal wound to Long. The latter jumped off the stool and cried: "Oh! Oh! Oh!" and Malone said: "Did I hit you, Billy? Gee, Kid, I'm sorry." Long died from the wounds two days later.

The defendant testified that the gun chamber he loaded was the first one to the right of the firing chamber and that when he pulled the trigger he did not "expect to have the gun go off". He declared he had no intention of harming Long, who was his friend and companion. The defendant was indicted for murder, tried and found guilty of murder in the second degree and sentenced to a term in the penitentiary for a period not less than five years and not exceeding ten years. A new trial was refused and after sentence was imposed, an appeal was taken.

Appellant alleges certain errors in the charge of the court and also contends that the facts did not justify a

---

[1] It has been explained that "Russian poker" is a game in which the participants, in turn, place a single cartridge in one of the five chambers of a revolver cylinder, give the latter a quick twirl, place the muzzle of the gun against the temple and pull the trigger, leaving it to chance whether or not death results to the trigger puller.

conviction for any form of homicide except involuntary manslaughter. This contention we over-rule. A specific intent to take life is, under our law, an essential ingredient of murder in the *first* degree. At common law, the "grand criterion" which "distinguished murder from other killing" was malice on the part of the killer and this malice was not necessarily "malevolent to the deceased particularly" but "any evil design in general; the dictate of a wicked, depraved and malignant heart": 4 Blackstone 199. Among the examples that Blackstone cites of murder is "coolly discharging a gun among a multitude of people", causing the death of someone of the multitude.

In Pennsylvania, the common law crime of murder is divided into two degrees, and murder of the *second* degree includes every element which enters into first degree murder except the intention to kill: *Commonwealth v. Divomte*, 262 Pa. 504, 507; 105 A. 821. When an individual commits an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result, he exhibits that "wickedness of disposition; hardness of heart; cruelty; recklessness of consequences and a mind regardless of social duty" which proved that there was at that time in him "that state or frame of mind termed malice".[2] This court has declared that if a driver "wantonly, recklessly and in disregard of consequences" hurls "his car against another or into a crowd" and death results from that act "he ought to face the same consequences that would be meted out to him if he had accomplished death by wantonly and wickedly firing a gun": *Com. v. Mayberry*, 290 Pa. 195, 199; 138 A. 686, citing cases from four jurisdictions.

In *Com. v. Hillman*, 189 Pa. 548; 42 A. 196, the charge of the court below was approved by this court. In that charge appears this statement: "Malice in law

---

[2] These quoted phrases are from the opinion of Chief Justice AGNEW in *Com. v. Drum*, 58 Pa. 9.

means a depraved and wicked heart that is reckless and disregards the rights of others. Reckless conduct that results in the death of another is malice. To illustrate that: If a man fires a gun into a crowd and kills another it is murder, because the fact of the reckless shooting of a gun into a crowd is malice in law. That wicked and depraved disposition and that recklessness and disregard of human life is malice."

In *Com. v. Knox*, 262 Pa. 428; 105 A. 634, the following instructions by the trial judge in a murder case was held by this court not to be error: "When a man uses a gun loaded with powder and shot and aimed at a vital part of the body of another and discharges it, he must be presumed to know that death is likely to follow." In *Com. v. Arnold*, 292 Pa. 210 at 213; 140 A. 898, this court said: "Malice will be implied from conduct, recklessness of consequences, or the cruelty of the crime".

Appellant has assigned for error certain excerpts from the charge of the court. The charge in its entirety affords no grounds for the reversal of the judgment and sentence. Certain excerpts if they stood alone might have misled the jury to the defendant's prejudice. For example, the trial judge said: "All felonious homicide or illegal or unlawful homicide is presumed to be malicious, that is, murder of some degree, until the contrary appears in the evidence." The *second* sentence after this one reads as follows: "Accordingly, when a felonious or unlawful homicide is proved, malice is presumed to have existed . . . as a presumption of fact". A homicide may be unlawful *without being* presumably malicious. The homicide known as involuntary manslaughter occurs when death is caused by an unlawful act or by a lawful act done in an unlawful manner. While there do appear statements in some of the reports that "all unlawful homicide is presumed to be malicious and, therefore, murder", careful trial judges always qualify that statement, as Chief Justice AGNEW did in *Com. v. Drum*, 58 Pa. 9 at page 17 where he said: "All murder . . . in-

cludes all unlawful killing under circumstances of depravity of heart, and a disposition of mind regardless of social duty". Trial judges should make it clear to the jury that an unlawful killing in order to constitute murder must result from an *intentional*, felonious act and not merely from an *inadvertent* or *negligent* act. The trial judge in a sentence which intervened between the two sentences above quoted, stated the applicable principle of law correctly as follows: "This presumption of malice does not rise, however, until the Commonwealth has made out a *prima facie* case of felonious homicide". This statement was in accord with what Mr. Justice STERN, speaking for this court, said in *Com. v. Wucherer*, 351 Pa. 305 at 310; 41 A. 2d 574, to wit: "It is important at the outset to bear in mind that the so-called presumption of malice does not arise until the Commonwealth has made out a prima facie case of felonious homicide". Defendant's rights were fully protected by the charge in its totality.

However, the charge was in several respects prejudicial to the Commonwealth. For example, the trial judge said: "It is the duty of the Commonwealth to prove that the killing was unlawful and intentional, and if the evidence taken as a whole raises reasonable doubt in the minds of the jury as to whether the killing was accidental or intentional, you must acquit the accused, for the reason that the Commonwealth has failed to sustain its case." This instruction was tantamount to saying that the Commonwealth in order to obtain the conviction of the defendant of any crime included in the indictment had to prove him guilty of murder in the first degree, for if the killing *was* intentional, it *would have been* murder in the *first* degree. The alternative presented to the jury by the instructions *was* limited to an *intentional* killing *or to an accidental* killing. The jury found that the killing was *neither* intentional *nor* accidental but that it was a malicious killing though *without* a specific intent in the killer to take life, and that, therefore, it was murder in the second degree.

The trial judge also erred in charging that "A person on trial for murder cannot be convicted of any offense if the testimony shows that the death was accidental". Death may be accidental though it resulted from a malicious act intentionally committed. In such a case the means were not accidental; the result was.[3] In the instant case if the defendant had by some negligent, unintentional act, caused Long to fall off the stool at which he was sitting in the store and if, as a result of that fall, Long had sustained a fatal injury, *both* the *initial act and* the *death* might be correctly characterized as accidental. But when the defendant knowing that a revolver had at least one loaded cartridge in it, pressed the muzzle of that revolver to the side of Long and pulled the trigger three times, his *act* cannot be characterized as accidental, even if his statement that he had *no intention to kill* Long is accepted (as the *jury* accepted it). The way the trial judge used the word "accidental" throughout the charge must have been confusing to the jury and might easily have misled it into acquitting the accused on the theory that since the *death* of Long was accidental, "the defendant cannot be convicted of any offense", (as the trial judge said). The latter should have made it clear to the jury that even though Long's death might have been unintended and, therefore, accidental, the evidence showed that the act which caused the victim's death was *not* accidental. This was the view the jury took of the case despite the court's instructions.

In another portion of the charge, the trial judge said to the jury: "If you believe the testimony of the defendant, that the shot was accidental and without intention

---

[3] If A maliciously beats B intending to do him enormous bodily harm without killing him and B dies as result of the beating, A can be found guilty of murder in the second degree, though death was "accidental" in the sense that it was not intended by A.

The difference between intentional *means* and "accidental" *results* is discussed in *Arnstein v. Metropolitan L. Ins. Co.*, 329 Pa. 158 at 162; 196 A. 491, and in footnote 1, page 237 of *O'Neill et al., v. Met. Life Ins. Co.*, 345 Pa. 232; 26 A. 2d 898.

on his part, and that the shot accidentally and without intention on his part struck the body of William H. Long, from the effects of which he afterwards died, then you should acquit the defendant". There was not in this record any evidence which would warrant a finding that "the shot was accidental". Later the judge instructed the jury that "If the killing was accidental, although done with a deadly weapon, it could not be said to be intentional or wilful; and, if neither intentional nor wilful, the crime of murder is not made out". What we have already said on this phase of the case sufficiently reveals the error in these instructions. Of such and similar errors, the appellant cannot complain; they were prejudicial only to the Commonwealth.

This court said in *Sears v. Birbeck*, 321 Pa. 375, 383; 184 A. 6: "It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide." When the issues in either a criminal or a civil case are not clarified in the judge's charge, the charge is of very little value in the adminis- tration of justice though it may contain no prejudicial error. A charge may be technically correct and yet be to the jury meaningless and useless. Many trial judges employ concrete illustrations [4] to help make clear to the jury what the issues are which the jury is to decide and

---

[4] In the well-known case of *Com. v. Harman*, 4 Pa. 269, Chief Justice GIBSON in charging the jury used an illustration to make clear to the jury why evidence should not be discredited because it was cir- cumstantial, and that even so-called "positive" evidence was to a certain degree inferential in nature, i.e., circumstantial.

In the famous case of *Com. v. Webster*, 5 Cushing 295, 311, Chief Justice SHAW of Massachusetts used the following simple illustration to instruct the jury as to the nature and value of circumstantial evi- dence: "When footprints are discovered after a recent snow, it is certain that some animated being has passed over the snow since it fell; and, from the form and number of footprints, it can be deter- mined with equal certainty, whether they are a man, a bird, or a quadruped."

how to apply legal principles to the facts so as to reach a just verdict.

The killing of William H. Long by this defendant resulted from an act intentionally done by the latter, in reckless and wanton disregard of the consequences which were at least sixty per cent certain from his thrice attempted discharge of a gun known to contain one bullet and aimed at a vital part of Long's body. This killing was, therefore, murder, for malice in the sense of a wicked disposition is evidenced by the intentional doing of an uncalled-for act in callous disregard of its likely harmful effects on others. The fact that there was no motive for this homicide does not exculpate the accused. In a trial for murder proof of motive is always relevant but never necessary.

All the assignments of error are over-ruled and the judgment is affirmed. The record is remitted to the court below so that the sentence imposed may be carried out.