J-S37008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WESLEY RASHAWN RICHARDS | |
| Appellant | No. 488 WDA 2015 |

Appeal from the Judgment of Sentence February 11, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000567-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 28, 2016**

Appellant, Wesley Rashawn Richards, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for third-degree murder, persons not to possess firearms, and firearms not to be carried without a license.[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> This matter arises out of the shooting death of the [V]ictim…on October 18, 2013 in a bar on the North Side of Pittsburgh.  The Commonwealth presented the testimony of two eyewitnesses to the shooting and video surveillance which also showed the shooting.  The eyewitnesses testified that in the early morning hours [Victim], [Appellant] and [Appellant's] companion entered

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6105(a)(1), 6106(a)(1), respectively.

the bar and were searched by a security guard at the door. When [Victim] entered the bar the first time, the security worker, Brian Collins, searched him and found a pocket knife which he removed and placed behind the bar. Later, [Vicitm] left the bar and the knife was returned to him. Shortly thereafter, [Victim] returned and was searched again but the knife was not found. [Appellant] and his companion, Walter Banks, were also searched each time they entered or returned to the bar but [the guard] found no weapons. [Mr.] Collins knew [Appellant] for several years and also knew [Victim] from the neighborhood.

At some point [Mr.] Collins became aware of something happening towards the back of the bar and as he went towards that area he saw [Victim] falling to the ground and then saw [Appellant] come around the corner with a gun in his hand. [Mr.] Collins grabbed [Appellant] and pinned him against the bar but was then hit in the head with a bottle by [Mr.] Banks. Stunned by the blow to the head, [Mr.] Collins let go of [Appellant] and when he looked again he saw [Appellant] standing over [Victim] shooting at him three times as he lay on the ground. [Mr.] Collins then followed [Appellant] and [Mr.] Banks towards the back as they left but then returned to [Victim]. [Mr.] Collins found [Victim] still alive and saw a closed pocket knife on the ground next to him.[1]

[1] The autopsy showed [Victim] died of gunshot wounds to the trunk. The first entered in the central upper back and the second in the lateral left buttock.

The Commonwealth also called the disc jockey who was working at the bar that night, Sylvanius Flowers, who also testified that he observed [Victim], [Appellant] and [Mr.] Banks standing near the bar together and they appeared to be laughing and joking. He then saw [Appellant] backing up toward the stairs and pull a gun out. He testified:

I'm standing there talking to a young lady. [Victim] is standing there with the other guy, his arm around [Victim's] neck. And me and the young lady was talking on my right side. And I happen to look over

and I see [Appellant] reach down beside his knees and pull out a gun.

[Mr.] Flowers also testified:

He pulls the gun up. He fires a shot. [Victim] duck[s] and take[s] the other guy's arm off [from around his neck] and he tries to run. [Then] after that he falls down. I don't know if he was hit or not but he falls down. Then [Appellant] comes up from around the back, steps back some, and starts running back, and goes and shoots him three times in the back.

[Mr.] Flowers testified that he never saw a knife in [Victim's] hand and never saw him threaten [Appellant] with a knife. He also testified that he saw the security guard, [Mr.] Collins, grab [Appellant] and wrestle with him for the gun before [Mr.] Collins was hit in the head with a bottle. The bartender, Tylonda Northington, also testified that she heard shots and ducked behind the bar and then saw [Mr.] Collins struggling with [Appellant] and [Appellant's] hand come over the bar with a gun in it.

The Commonwealth also introduced video surveillance taken from several cameras in the bar that showed [Victim], [Appellant] and [Mr.] Banks inside the bar before and during the shooting and confirmed the testimony of the eyewitnesses. The Commonwealth also introduced the certification that [Appellant] was not licensed to carry a firearm and it was stipulated that [Appellant] had a felony conviction that rendered him a person not to possess.

(Trial Court Opinion, filed July 20, 2015, at 2-4) (internal citations omitted).

Procedurally, the court convicted Appellant on November 3, 2014, of third-degree murder, persons not to possess firearms, and firearms not to be carried without a license. The court sentenced Appellant on February 11, 2015, to an aggregate term of twenty to forty years' imprisonment. Appellant timely filed post-sentence motions on February 19, 2015, which

the court denied on February 23, 2015. Appellant timely filed a notice of appeal on March 25, 2015. On April 1, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension, Appellant timely complied.

Appellant raises one issue for our review:

> WERE APPELLANT'S STATE AND FEDERAL DUE PROCESS RIGHTS (AS GUARANTEED HIM BY PA. CONST. ART. I § 9 AND U.S. CONST. AMEND. XIV) VIOLATED WHEN HE WAS CONVICTED OF THE CRIME OF THIRD DEGREE MURDER— RATHER THAN, AS HE SHOULD HAVE BEEN, OF VOLUNTARY MANSLAUGHTER UNDER EITHER 18 PA.C.S. § 2503—BASED ON INSUFFICIENT EVIDENCE (THE COMMONWEALTH HAVING FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT'S ACT OF KILLING THE DECEDENT…[WAS] NOT AN ACT THAT UNDER THE CIRCUMSTANCES OF THIS CASE CONSTITUTED EITHER IMPERFECT SELF-DEFENSE VOLUNTARY MANSLAUGHTER OR HEAT-OF-PASSION VOLUNTARY MANSLAUGHTER)?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Randal B. Todd, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion at 4-7) (finding: Victim did not exchange words with Appellant, threaten Appellant, or make gestures or actions directed to Appellant which could reasonably be construed as serious provocation; no evidence suggested Victim threatened Appellant with knife Victim had in his

- 4 -

possession or attempted to stab or injure Appellant; rather, eyewitness testimony and surveillance camera footage show Appellant acted with malice as he stood over Victim and repeatedly fired shots at him while Victim was lying on ground; record belies Appellant's assertion that he acted in sudden and intense passion resulting from serious provocation by Victim; Commonwealth presented sufficient evidence to sustain Appellant's conviction for third-degree murder).[2]  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

*Joseph D. Seletyn*
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/28/2016

_____

[2]  Appellant also claims the evidence at trial supported a voluntary manslaughter conviction based on an "imperfect self-defense" theory. **See** 18 Pa.C.S.A. § 2503(b) (explaining any person who intentionally or knowingly kills individual commits voluntary manslaughter if at time of killing he believes circumstances to be such that, if they existed, would justify killing, but his belief is unreasonable).  Nevertheless, Appellant relied solely on the heat-of-passion voluntary manslaughter theory at trial, so this claim is waived. **See Commonwealth v. Gordon**, 528 A.2d 631, 638 (Pa.Super. 1987), *appeal denied*, 517 Pa. 621, 538 A.2d 875 (1987) (stating: "This Court cannot review a case upon a theory different from that relied upon in the trial court, or raised for the first time on appeal").

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

vs.

WESLEY RICHARDS,

Defendant.

CRIMINAL DIVISION

CC NO: 201400567

APPEAL

**OPINION**

JUDGE RANDAL B. TODD

COPIES SENT TO:

Counsel of Record for the
Commonwealth of Pennsylvania

Stephen A. Zappala, Jr.
District Attorney

By

Michael Streily, Esquire
Assistant District Attorney
401 Courthouse
Pittsburgh, PA 15219

Counsel for Defendant:

Scott B. Rudolf, Esquire
Appellate Counsel
Law Offices of the Public Defender
400 County Office Building
Pittsburgh, PA  15219

ORIGINAL
Criminal Division
Dept. of Court Records
Allegheny County, PA.

FILED
2015 JUL 20  AM 11: 36
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

(16)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) ) ) | CRIMINAL DIVISION |
| | ) | CC NO: 201400567 |
| vs. | ) ) | |
| WESLEY RICHARDS, | ) ) | |
| Defendant. | ) | |

July 20, 2015

TODD, J.

## OPINION

This is an appeal by Defendant, Wesley Richards, following a non-jury trial in which he was found guilty of Murder of the Third Degree in violation of 18 Pa.C.S.A. § 2502(c); Possession of Firearm Prohibited in violation of 18 Pa.C.S.A.§ 6105(a)(1); and, Firearms Not To Be Carried W/O License in violation of 18 Pa.C.S.A.§ 6106(a)(1). Defendant was sentenced to 20 to 40 years incarceration for murder and concurrent sentences of 5 to 10 and 3 to 6 years on the remaining counts.. Defendant filed Post Sentence Motions which were denied on February 23, 2015. On March 25, 2015 Defendant filed a Notice of Appeal. On April 1, 2015 a 1925(b) Order for Concise Statement of Matters Complained of on Appeal was filed. On April 28, 2015 Defendant filed his Concise Statement setting forth the following:

1. Appellant's state and federal due process rights, guaranteed to him by Pa. Const. art. I § 9 and U.S. Const. amend. XIV, were violated when he was convicted of 18 Pa.C.S. § 2502(c) Third Degree Murder (CC2014-00567, Count I) notwithstanding the Commonwealth's failure to prove, beyond a reasonable doubt, that Appellant's fatal shooting of the Decedent, Donald Lowry, was not an act of qualifying as 18 Pa.C.S. § 2503(a) Voluntary Manslaughter.

1

2.     Appellant's state and federal due process rights, guaranteed to him by Pa. Const. art. I § 9 and U.S. Const. amend. XIV, were violated when he was convicted of 18 Pa.C.S. § 6106 Unlawful Possession of an Unlicensed Concealed Firearm (CC 2014-00567, Count III) notwithstanding the Commonwealth's failure beyond a reasonable doubt, that the firearm that Appellant possessed on October 18, 2013 had been concealed by him on his person.

## BACKGROUND

This matter arises out of the shooting death of the victim, Donald Lowry, on October 18, 2013 in a bar on the North Side of Pittsburgh. (T., p. 11)  The Commonwealth presented the testimony of two eyewitness to the shooting and video surveillance which also showed the shooting.  The eyewitnesses testified that in the early morning hours Lowry,  Defendant and his companion entered the bar and were searched by a security guard at the door.  When Lowry entered the bar the first time, the security worker, Brian Collins, searched him and found a pocket knife which he removed and placed behind the bar. (T., p. 37)  Later, Lowry left the bar and the knife was returned to him.  Shortly thereafter,  Lowry returned and was searched again but the knife was not found. (T., p. 38)  Defendant and his companion, Walter Banks, were also searched each time they entered or returned to the bar but found no weapons. (T., p. 40)  Collins knew Defendant for several years and also knew Lowry from the neighborhood.

At some point Collins became  aware of something happening towards the back of the bar and as he went towards that area he saw Lowry falling to the ground and then saw Defendant come around the corner with a gun in his hand. (T., p. 42)  Collins grabbed Defendant and pinned him against the bar but was then hit in the head with a bottle by Banks. (T., p. 43)  Stunned by the blow to the head, Collins let go of Defendant and when he looked again he saw Defendant standing over Lowry shooting at him three times as he lay on the ground.  (T., pp. 43-44)  Collins then followed Defendant and Banks  towards the back as they left but then returned

2

to Lowry. Collins found Lowry still alive and saw a closed pocket knife on the ground next to him. (T., p. 45) [1]

The Commonwealth also called the disc jockey who was working at the bar that night, Sylvanius Flowers, who also testified that he observed Lowry, Defendant and Banks standing near the bar together and they appeared to be laughing and joking. (T., p. 84) He then saw Defendant backing up toward the stairs and pull a gun out. He testified:

> I'm standing there talking to a young lady. Donald (Lowery) is standing there with the other guy, his arm around Donald's neck. And me and the young lady was talking on my right side. And I happen to look over and I see Mr. Wes (Defendant) reach down beside his knees and pull out a gun. (T., p. 85)

Flowers also testified:

> He pulls the gun up. He fires a shot. Donald duck and take the other guy's arm off and he tries to run. The after that he falls down. I don't know if he was hit or not but he falls down. Then Mr. Wes comes up from around the back, steps back some, and starts running back, and goes and shoots him three times in the back. (T., p. 86)

Flowers testified that he never saw a knife in Lowry's hand and never saw him threaten Defendant with a knife. (T., p. 86) He also testified that he saw the security guard, Collins, grab Defendant and wrestle with him for the gun before Collins was hit in the head with a bottle. (T., p. 87) The bartender, Tylonda Northington, also testified that she heard shots and ducked behind the bar and then saw Collins struggling with Defendant and Defendant's hand come over the bar with a gun in it. (T., p. 95).

The Commonwealth also introduced video surveillance taken from several cameras in the bar that showed Lowry, Defendant and Banks inside the bar before and during the shooting and

---

[1] The autopsy showed Lowery died of gunshot wounds to the trunk. The first entered in the central upper back and the second in the lateral left buttock. (T., p. 59)

3

confirmed the testimony of the eyewitnesses. The Commonwealth also introduced the certification that Defendant was not licensed to carry a firearm and it was stipulated that Defendant had a felony conviction that rendered him a person not to possess. (T., p. 60) Considering all of the testimony, Defendant was found guilty of third degree murder.

**DISCUSSION:**

Defendant first argues that the Commonwealth failed to prove beyond a reasonable doubt that Defendant's fatal shooting of the victim was not voluntary manslaughter. Voluntary manslaughter is defined in pertinent part as follows:

> **a) General rule.**--A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
> (1) the individual killed; 18 Pa.C.S.A. § 2503

Murder, including murder in the third degree, is defined as follows:

> **a) Murder of the first degree.**--A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.
> **(b) Murder of the second degree.**--A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
> **(c) Murder of the third degree.**--All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree. 18 Pa. C.S.A. § 2502

Third-degree murder is defined in the Crimes Code as "All other kinds of murder" other than first-degree murder or second-degree murder. 18 Pa.C.S.A. § 2502(c). The elements of the third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder. *Commonwealth v. Pitts,* 404 A.2d 1305 (1979).

In *Commonwealth v. Seibert,* 622 A.2d 361 (Pa. Super. 1993) the Superior Court stated the following in discussing the elements necessary to prove third degree murder:

4

In *Commonwealth v. Malone*, 354 Pa. 180, 47 A.2d 445 (1946), the Pennsylvania Supreme Court clarified the concept of malice: When an individual commits an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result, he exhibits that "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty" which proved that there was at that time in him "the state or frame of mind termed malice." *Id.* at 183, 47 A.2d at 447 (quoting *Commonwealth v. Drum, supra.*) In *Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981), the Pennsylvania Supreme Court noted that malice may be found where the "actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Id.* at 228, 431 A.2d at 232. *See Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973) (malice imports the absence of justification, excuse or mitigation *and* intent to cause a particular harm *or* the wanton and willful doing of an act with knowledge of circumstances indicating awareness of a plain and strong likelihood that harm will result); *see also Commonwealth v. Hare*, 486 Pa. 123, 129, 404 A.2d 388, 391 (1979) (malice may be found where the perpetrator "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm."); *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176 (1982) *Commonwealth v. Seibert*, 622 A.2d 361, 364-65 (1993)

As verdict winner, the Commonwealth is entitled to have the evidence viewed in the light most favorable to it. *Commonwealth v. Cropper*, 345 A.2d 645, 646 (1975) In addition, when reviewing a sufficiency of the evidence claim the evidence must be viewed in the light most favorable to the Commonwealth, as verdict winner, to determine if there is sufficient evidence to enable a fact-finder to find every element of the crime charged beyond a reasonable doubt. *Commonwealth v. McNair*, 603 A.2d 1014 (1992). It is exclusively within the province of the fact-finder to believe none, some or all of the evidence presented. *Commonwealth v. Henry*, 569 A.2d 929, 939 (1990); *Commonwealth v. Jackson*, 485 A.2d 1102 (1984). If the fact finder reasonably could have determined from the evidence presented that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood*, 637 A.2d 1335, 1343 (1994) *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. Ct. 2000)

5

when he stated: "And I happen to look over and I see Mr. Wes (Defendant) reach down beside his knees and pull out a gun." (T., p. 85) This testimony supports the finding that Defendant had the gun concealed on his person and was sufficient to support his conviction for carrying an unlicensed concealed weapon.

By the Court:

_____ J.